# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

                                 :       **CRIMINAL NO. 17-240**

      **v.**

                                 :       **(JUDGE MANNION)**

**JEFFREY OLSON**

                                 :

        **Defendant**

                                 :

## MEMORANDUM

Presently before the court is the defendant Jeffrey Olson's ("Olson") motion to withdraw his guilty plea.[1] (Doc. 61). Based on the following, Olson's motion (Doc. 61) shall be **DENIED**.

## I.    BACKGROUND

On June 6, 2017, the Federal Bureau of Investigation ("FBI") filed a criminal complaint against Olson charging him with wire fraud under 18 U.S.C. §1343 (2018) and bank fraud under 18 U.S.C. §1344 (2018). (Doc. 1). That same day, Judge Joseph F. Saporito appointed Joseph A. O'Brien

---

[1] Olson previously filed a pro-se motion to withdraw his guilty plea on March 16, 2018. (Doc. 41). Since then, Olson has requested and received a new attorney on two occasions. The present motion before this court was filed by Olson's current attorney. As such, Olson's previous motion that was filed pro-se (Doc. 41) will be dismissed as moot.

as Olson's counsel. (Doc. 5).  On August 8, 2017, a grand jury indicted Olson with one count of wire fraud and one count of bank fraud. (Doc. 12). On August 14, 2017, Olson filed a letter with the court asking for new counsel. (Doc. 17). Three days later Olson plead not guilty to the indictment. (Doc. 18). During his arraignment hearing, Olson decided to keep Joseph A. O'Brien as his counsel after discussing his options with the court. On February 5, 2018, the government filed an information against Olson, which included the two charges from the Middle District of Pennsylvania and one count of attempted bank fraud from the Southern District of New York. (Doc. 30). That same day, the Government and Olson entered into a plea agreement for the charges listed in the information. (Doc. 31).

On February 15, 2018, Olson appeared before this court and entered a guilty plea to the three charges listed in the information, under the plea agreement. (Doc. 37). Then, on March 16, 2018, Olson filed a *pro-se* motion to withdraw his guilty plea (Doc. 41) and a *pro-se* motion to appoint new counsel (Doc. 42). On June 4, 2018, this court appointed Dina Chivar as Olson's counsel (Doc. 50), who withdrew as Olson's counsel on August 1, 2018, because of a conflict of interest. (Doc. 57) (Doc. 58). On August 2, 2018, this court appointed Matthew Comerford as Olson's counsel. (Doc. 59). Thereafter, through his counsel, Olson filed the present motion to

withdraw his guilty plea on November 2, 2018. (Doc. 61). The court has received both parties' briefs, and the motion is now ripe for disposition.

## II.     LEGAL STANDARD

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *U.S. v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." *U.S. v. Johnson*, 491 Fed.Appx. 326, 329 (3d Cir. 2012) (citing Fed.R.Crim.P. 11(d)(2)(B)). "The burden of demonstrating a 'fair and just reason' [sic] falls on the defendant, and that burden is substantial." *Jones*, 336 F.3d at 252 (quoting *U.S. v. Hyde*, 520 U.S. 670, 676-77 (1997)) (citations omitted).

"In determining whether a defendant has satisfied his burden, a district court must consider three factors: '(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.'" *Johnson*, 491 Fed.Appx. at 329 (citing *Jones*, 336 F.3d at 252). "A shift in defense tactics, a change of mind, or the fear of punishment are

not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Johnson*, 491 Fed.Appx. at 329 (quoting *U.S. v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001)). If a defendant fails to meet his burden regarding the first two factors, the government does not need to show prejudice. *U.S. v. Shumaker*, 475 Fed.Appx. 817, 821 (3d Cir. 2012) (citing *U.S. v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986)).

### III.    DISCUSSION

The first factor is Olson's assertion of his innocence. In his motion, Olson seeks to withdraw his guilty plea to the charges on all counts of the information filed against him. He asserts that he is innocent of the charges to which he pled guilty. However, in his brief, Olson states, without elaboration, that at a hearing on his motion he will "place his averred assertion of innocence upon the record." (Doc. 64-1, at 3). Olson does not address in his brief how he is innocent of the charges against him; nor does he specify what evidence he has to show his innocence.

Through an untimely reply brief, Olson did eventually assert a factual basis for his plea withdrawal. Concerning the wire fraud charge in count one, Olson points out it alleges that he utilized the credit card information of Sean

McCormick ("McCormick"), without his permission, to put a three-thousand-dollar down payment on a truck . . . ." (Doc. 69, at 2). However, Olson asserts that "he did in fact have McCormick's express permission to use his credit card . . . ." (Doc. 69, at 3). Thus, Olson maintains that he "cannot be guilty of the instant offense." (Doc. 69, at 3). Olson alleges that "[i]t would not be a stretch for the jury to believe that [McCormick] provided him with the additional $3,000 down payment," because McCormick admitted to loaning Olson thirty-thousand-dollars "to help him get back on his feet and [start] [sic] a business." (Doc. 69, at 3). However, McCormick's decision to issue Olson a loan provides virtually no support for Olson's allegation that McCormick also authorized him to use his credit card.

With respect to the bank fraud charge in count two, Olson points out it alleges that he gave a check for two-hundred-thousand dollars to McCormick, which McCormick deposited and used the funds before the check bounced leaving McCormick's account with a negative balance. (Doc. 69, at 4). Now, Olson asserts that this "was actually a scheme to defraud McCormick's wife." (Doc. 69, at 5). Olson alleges that he and McCormick "agreed to show McCormick's wife a check . . . to calm her down because she was angry that McCormick loaned money to Olson and "demanded evidence that they would receive a return on their investment." (Doc. 69, at

4). Olson admits that he provided McCormick with a cashier's check but alleges that they "both knew the check could not be covered" and they "[b]oth agreed that the check would not be deposited." (Doc. 69, at 4-5). Olson also asserts that he did not "knowingly" defraud a bank because McCormick deposited the check without Olson's permission and after he told Olson he would not deposit it. (Doc. 69, at 5). Olson claims this allegation is credible because McCormick expected a return on his investment. (Doc. 69, at 5). However, Olson offers no reason why McCormick would try to deposit a check that he knew could not be covered to obtain a return on his investment. Nevertheless, a reasonable jury could conclude that Olson committed bank fraud by signing a check knowing that he did not have the funds to cover it.

With respect to the attempted bank fraud charge in count three, Olson points out it alleges that he issued a ten-million-dollar check to a realtor for the purchase of a home. (Doc. 69, at 5). Olson asserts that he did not see nor "pass" the check at issue. (Doc. 69, at 5). Now, he claims that Kelly Ashton passed a fraudulent check and that his allegation is credible simply because of her "role in the real estate transaction." (Doc. 69, at 6).

Olson fails to provide "sufficient reasons to explain why contradictory positions were taken before the district court" regarding his guilt. *Jones*, 336 F.3d at 253. Through its extensive plea colloquy, the court went into great

detail with Olson concerning, among other things, his competence, rights, understanding, and volition in entering a plea, as well as a detailed review of the elements of the charges in counts one, two, and three. The court concluded now as it did then that it is abundantly clear that Olson knew precisely to what he was pleading.

Olson was competent when he signed his plea agreement and entered his guilty plea, and he knowingly and voluntarily did both after consulting with counsel. By entering into the plea agreement with the government and accepting responsibility, Olson significantly reduced his exposure to incarceration. In the plea agreement, the government agreed that "[i]f the defendant can adequately demonstrate recognition and affirmative acceptance of responsibility to the Government as required by the Sentencing Guidelines, the Government will recommend that the defendant receive a three-level reduction in the defendant's offense level for acceptance of responsibility." (Doc. 31, at 9-10).

At the hearing, the court explained to Olson all the rights he had if he continues with his plea of not guilty and the rights he was giving up by pleading guilty. The government described the charges in counts one, two, and three as well as the potential maximum prison sentences Olson faced for these crimes. Additionally, the court notes that Olson testified under oath

at his guilty plea hearing and the court warned Olson that if he answered any of the court's questions untruthfully, he would subject himself to a charge of perjury or false swearing.

Further, Olson acknowledged that he read and understood his charges. Then, after hearing the details of the elements of each charge in counts one, two, and three, Olson admitted, under oath, that he was guilty of the charges. Moreover, in his Acknowledgment of Rights Waived, Olson reaffirmed his understanding that by pleading guilty to counts one, two, and three of the information he was "admitting that what the Government says about [him] in the Information is true and that [he] did, in fact, commit the offenses with which [he was] charged." (Doc. 38, at 4). At the hearing, Olson admitted he read the document, discussed it with his attorney, and understood its contents before he signed it.

In 2016, the Third Circuit Court of Appeals reiterated that some facts in the record must support a defendant's assertion of innocence regarding a motion to withdraw a guilty plea and the defendant must supply sufficient reasons to explain [his] change in position before the district court." *U.S. v. Hannibal*, 663 Fed.Appx. 206, 209 (3d Cir 2016). Here, Olson states that his "sole reason [for entering] a [guilty] plea to charges he did not commit" was because "[h]e felt pressured to enter a plea of guilty," so he told the court

"what he was instructed to by [his] [c]ounsel at the time of the plea." (Doc. 69, at 6). However, this "sole reason" is completely negated by Olson's letter to this court indicating that the same attorney, who represented Olson at the plea hearing, previously advised Olson that he should go to trial. (Doc. 17, at 2).

Because Olson's "sole reason" for pleading guilty is contradicted by direct evidence from Olson's letter to this court, the court finds Olson failed to demonstrate his innocence and failed to proffer any strong reasons justifying the withdrawal of his guilty plea. As such, the court finds no need to either discuss the prejudice to the government or hold a hearing on this motion. After considering the first two of three relevant factors, the court, in its discretion, finds that Olson has not established a "fair and just reason" to withdraw his knowing and voluntary guilty plea to counts one, two, and three of the information, and finds that Olson has failed to meet his "substantial" burden to withdraw his guilty plea.

## IV.    CONCLUSION

Based on the foregoing, Olson's motion to withdraw his guilty plea (Doc. 61) shall be **DENIED** and his pro-se motion to withdraw his guilty plea (Doc. 41) shall be **DISMISSED AS MOOT**. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 30, 2019**
O:\MANNION\SHARED\MEMORANDA - DJ\CRIMINAL MEMORANDA\2017 CRIMINAL MEMORANDA\17-240-01.DOCX