# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | : |
| | :  3:17-CR-240 |
| v. | : |
| | :  (JUDGE MANNION) |
| **JEFFREY OLSON,** | : |
| **Defendant** | : |

# MEMORANDUM

## I.  BACKGROUND

On August 17, 2020, defendant Jeffrey Olson, an inmate confined at FCI Schuylkill Camp, Minersville, Pennsylvania, who is serving an 120-month federal sentence, (*see* March 26, 2019 Judgment, Doc. 92), filed, *pro se*, a Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), and he requests his transfer from prison to home confinement, due to his medical conditions and the COVID-19 pandemic. (Doc. 102). Olson admits that he has not yet served 50% of his sentence and admits that even though he does not qualify under the BOP's criteria for release, he requests the court to release him based on his medical conditions, namely, A-fib, cardio myopathy, and congestive heart failure, as well as cervical spinal issues and neuropathy. Olson also states that he has a kidney condition, hypertension, and is obese. Olson attached copies of portions of his BOP medical records

1

to his motion to show that he has been diagnosed with the stated conditions. Olson, age 59, alleges that his underlying medical conditions would make him more at risk from suffering severe complications if he contracts COVID-19. Olson also alleges that he is not receiving proper medical treatment in the prison. As such, Olson alleges that extraordinary and compelling reasons exist to support his release from prison.

Olson states that he tried to obtain assistance for compassionate release from his Unit Team and was advised he did not qualify. Olson then states that he submitted an email request to his Unit Manager Mr. Raup asking for assistance. He attached a copy of his July 1, 2020 email to Raup to his motion. (Doc. 102 at 18). Olson states that since he has waited 40 days after he emailed Raup, he can now proceed with his motion requesting the court to release him.

On August 17, 2020, the court directed the government to respond to defendant's motion by August 31, 2020. (Doc. 103). The government requested an extension of time which was granted by the court. (Docs. 105 & 106).

On August 27, 2020, Olson's mother-in-law filed a letter with the court in support of Olson's request for release from prison so that he could help with the care of his son. (Doc. 104).

On August 28, 2020, the government filed copies of Olson's BOP medical records, which the court directed to be filed under seal. The

2

government filed its brief in opposition to Olson's motion on September 3, 2020, with an attached Declaration. (Docs. 112 & 112-1),

On September 14, 2020, Olson filed his reply brief with Exhibits, including copies of inmate COVID-19 test results in federal prisons, more copies of his medical records, and a copy of his BOP Inmate Data regarding his sentence calculation and his projected release date of October 20, 2026. (Doc. 113, page 12). Olson also attached a copy of his August 25, 2020 BOP Individualized Needs Plan – Program Review, which indicates that Olson was not eligible for "RRC/HC", i.e., Residential Reentry Center or home confinement, placement, in part since he has only served 3 years and 2 months towards his current sentence, and that he would be reviewed again when he had 17-19 months remaining on his sentence. (Id. at 13-14). Olson also attaches a copy of the number of inmates in federal prison who have tested positive for COVID-19 as of September 6, 2020. Olson alleges that no testing is occurring at the prison camp where he is confined and that the prison is not taking proper steps to keep inmates safe from the virus.[1]

---

[1] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. According to the BOP's website as of October 8, 2020, there was no current positive case of COVID-19 among inmates and one positive case for staff at FCI Schuylkill, and one inmate had recovered from the virus.

Since the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff are found in the BOP's websites, they are not repeated herein. *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

3

Olson also contends that his July 1, 2020 email to Raup constitutes his request for compassionate release to the BOP that is required under 18 U.S.C. §3582(c)(1)(A) and, he states that he did not receive a response to his request and more than 30 days has lapsed. As such, Olson claims that he has complied with the statute's exhaustion requirement. He also alleges that the exhaustion requirement is not mandatory and that it can be waived by the court in light of the COVID-19 pandemic.

For the reasons set forth below, Olson's motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), will be dismissed without prejudice due to his failure to exhaust his prison administrative remedies under §3582(c)(1)(A)(i), since he filed his present motion before he submitted a proper request to the Warden.[2]

---

[2]To the extent Olson, who is proceeding *pro se*, is liberally construed as also seeking home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, based on his reference to it, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). *See also* United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). Further, after a defendant is sentenced to imprisonment by the court, the BOP is solely responsible for determining the defendant's place of incarceration. *See* 18 U.S.C. §3621(b); 18 U.S.C.

**II.    DISCUSSION**[3]

The court will first consider the exhaustion issue since "18 U.S.C. §3582 (c)(1)(A) contains a threshold exhaustion requirement." United States v. Schultz, —— F.Supp.3d ——, 2020 WL 1872352, at *3 (W.D. N.Y. April 15, 2020). *See also* United States v. Gadsden, 2020 WL 3871083, *1 (W.D. Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

---

§3624(c). *See also* United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so."); United States v. Powell, 2020 WL 2848190, *2 (E.D. Pa. June 2, 2020) ("[T]o the extent that [defendant] seeks to appeal the prison's denial of home confinement, such decision is not reviewable by this Court.") (citing 18 U.S.C. §3621 ("[A] designation of a place of imprisonment ... is not reviewable by any court.")).

[3]After Olson pled guilty to wire fraud under 18 U.S.C. §1343, bank fraud under 18 U.S.C. §1344, and one count of attempted bank fraud under 18 U.S.C. §§1344 and 1349, on March 26, 2019, the court imposed an 120-month concurrent prison sentence on him, followed by three years of supervised release. (Doc. 92).

Since the underlying facts of Olson's arrest and conviction as well as the background in this case are detailed in the government's brief, (Doc. 112 at 1-2), in the court's January 30, 2019 Memorandum denying Olson's motion to withdraw his guilty plea, (Doc. 72), and in the Third Circuit's April 3, 2020 Opinion, (Doc. 100-1), regarding Olson's appeal, they are not repeated herein.

The government argues that Olson's motion for compassionate release under 18 U.S.C. §3582(c)(1)(A), should be dismissed without prejudice since he has failed to exhaust administrative remedies and that the court lacks authority to grant his request for release to home confinement. (Doc. 112).

Specifically, the government states in its brief, (Doc. 112 at 6), that:

> On July 1, 2020, Olson communicated with staff members regarding his medical status. *See* Exhibit "A" attached to Olson's Motion. (Doc. 102). However, this is not the formal process required by the Bureau of Prisons to request a reduction in sentence from the Warden. Olson has failed to take the necessary steps to request release from the Warden. *See*, attached Government's Exhibit A [Doc. 112-1]. Accordingly, Olson's motion is premature.

The government's Exhibit A is the September 3, 2020 Declaration of William Lavelle, Attorney-Advisor for the BOP at FCI Schuylkill, in which he avers that Olson has not requested compassionate release from the Warden of FCI Schuylkill and that he has not exhausted his administrative remedies under §3582(c)(1)(A).

No doubt that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)). *See also* United States v. Hight, 2020 WL 5653487, *5 (E.D. Pa. Sept. 23, 2020) (court held that "if a defendant

requests that the warden grant him a transfer to home confinement under the CARES Act, the warden denies the request, and thirty days have elapsed since presenting the request to the warden, the Court finds that the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A) is satisfied."). In Hight, since the defendant submitted a letter from the warden of the prison advising him that his request for transfer to home confinement under the CARES Act was denied and explained why, the court found that defendant satisfied the administrative exhaustion requirement under §3582(c)(1)(A).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, ––– F.Supp.3d ––––, 2020 WL 1872352, at *2 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

"Prior to petitioning a court for relief under §3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden." United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020). Thus, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has

7

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**.'" United States v. Harris, ---- F.3d ----, 2020 WL 5198870812, *1 (3d Cir. 2020) (citing 18 U.S.C. §3582(c)(1)(A) (emphasis original). Further, "the [compassionate release] statute states that the defendant may file the motion thirty days after the warden receives his request." *Id.* (citing United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.")).

Although Olson contends that his July 1, 2020 email to Raup constituted his request for compassionate release to the BOP, the court finds that this email was not a proper request for purposes of exhaustion under §3582(c)(1)(A).

"To implement the First Step Act's expansion of compassionate release, the Bureau of Prisons issued a Program Statement listing the particular factors the BOP should consider to assess whether a request for reduction in sentence presents extraordinary and compelling circumstances. Fed. Bur. of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582 and 4205(g)." Hight, 2020 WL 5653487, *3.

8

An inmate's request to the Warden for release to home confinement must comport with the BOP's program statement concerning procedures for implementing 18 U.S.C. §3582, which requires certain information. *See* BOP Program Statement §571.61(a)(1) and (2) (Initiation of request – extraordinary or compelling circumstances).

The Program Statement, in relevant part, provides:

§571.61 Initiation of request – extraordinary or compelling circumstances.

a. A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:

(1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.

(2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

In United States v. Williams, 2020 WL 2748287, *2 (E.D. Tenn. May 27, 2020), the court explained the process:

The BOP has outlined the administrative appeal process. *See* Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582 and

4205(g) (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The BOP Program Statement explains that a prisoner seeking a compassionate release must first file a request with the warden asking the BOP to move for compassionate release on the prisoner's behalf. *See id.* at 3 (citing 28 C.F.R. §571.61).

Clearly, Olson's email to Raup is not a request that the Warden, or any BOP official, file a motion for compassionate release on his behalf under §3582(c)(1)(A). Nor did Olson's email contain the minimum information required to consider it as a §3582(c)(1)(A) request for compassionate release. In his email to Raup, Olson states that he sent a prior email request to Ms. Brill about his medical status and getting out, and that she indicated he was not qualified. Olson also identified some of his medical conditions, and he complained that there was not "competent medical care" at the prison. Olson also referred to Attorney General Barr's directive that inmates with serious medical issues who are not violent and pose no danger to the community may be released. Olson also indicated that he had not yet served 50% of his sentence and asked "if it is possible to go by medical issues?" Further, Olson did not adequately describe a release plan covering such issues as his residence upon release, his means of supporting himself, and where he will receive medical treatment and how he will pay for it.

Also, Olson's July 1, 2020 email did not specifically ask to be "released to home confinement" in compliance with the CARES Act, and it did not reference 18 U.S.C. §3582(c)(1)(A). Thus, Olson's email did not comply with the above stated minimum requirements to constitute a request that the BOP

bring a motion for compassionate release on his behalf pursuant to 18 U.S.C. §3582(c)(1)(A). *See* Powell, 2020 WL 2848190, *2 n. 5.

Here, Olson's email to Raup does not constitute exhaustion with respect to his present motion. *See* United States v. Pitt, 2020 WL 2098272, *2 (M.D. Pa. May 1, 2020) (Court found that defendant's previous request to the warden for the BOP for his compassionate release under 18 U.S.C. §3582(c)(1)(A), could not be considered for purposes of exhaustion with respect to defendant's subsequent motion based on COVID-19 since his previous request "was not based on the COVID-19 pandemic or any other medical reasons.") The court in Pitt, *id.*, stated: "One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue. To properly exhaust administrative remedies, therefore, the administrative complaint must raise the same claims asserted in the federal court filing." (quoting United States v. Valenta, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020)) (citing Gadra-Lord v. Doe, 736 F. App'x 30, 32 (3d Cir. 2018)). *See also* United States v. Wilson, 2020 WL 1975082, *4 (E.D. Pa. April 24, 2020) ("To enable Bureau of Prisons to make this informed decision envisioned by Congress, the Bureau of Prisons must be fairly put on notice of the grounds for compassionate release.").

Thus, the court finds that Olson's motion is premature and that he must first submit a request for compassionate release to the Warden pursuant to §3582(c)(1)(A).

Moreover, the court cannot yet determine if Olson has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of

several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement).

### III. CONCLUSION

Defendant Olson's Motion for Compassionate Release and for Release to Home Confinement related to the COVID-19 pandemic, (Doc. 102), will be **DISMISSED WITHOUT PREJUDICE** for failure to comply with the exhaustion requirement under §3582(c)(1)(A)(i) since he filed his motion before he submitted a proper request to the Warden. Further, insofar as Olson is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: October 13, 2020**
17-240-02