**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY OLSON,** | : | |
| **Petitioner** | : | **CASE NO. 3:17-CR-240** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Pending before the court is petitioner Jeffrey Olson's *pro se* Motion to Vacate, Set Aside or Correct his 120-month federal prison sentence, (*see* March 26, 2019 Judgment, Doc. 92), filed on March 19, 2021. (Doc. 133). Olson, an inmate confined at FCI Schuylkill Camp, Minersville, Pennsylvania, pleaded guilty to wire fraud under 18 U.S.C. §1343, bank fraud under 18 U.S.C. §1344, and one count of attempted bank fraud under 18 U.S.C. §§1344 and 1349. Olson's projected release date by the BOP is October 20, 2026. At his guilty plea hearing, Olson was represented by Joseph A. O'Brien, Esq., and thereafter, Olson was represented by Matthew Comerford, Esq. Olson's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against both O'Brien and Comerford. Olson claims that his initial counsel, O'Brien, was ineffective and pressured him to pled guilty, which resulted in his involuntary guilty plea. Olson also claims that his subsequent counsel, Comerford, was ineffective

1

for filing a motion to withdraw his guilty plea and for filing an appeal brief without first meeting with him and discussing the filings with him.

As relief, Olson requests the court to vacate his sentence and allow him to withdraw his guilty plea. He also requests an evidentiary hearing.

Upon the court's review of the record in this case, the motion, as well as the briefs, Olson's §2255 motion will be **DENIED** as to all of his claims without the need for an evidentiary hearing.

## I.    BACKGROUND[1]

On August 8, 2017, a grand jury in the Middle District of Pennsylvania indicted Olson on one count of Wire Fraud, 18 U.S.C. §1343, and one count of Bank Fraud, 18 U.S.C. §1344. (Doc. 12). On September 26, 2017, Olson was charged with one count of attempted Bank Fraud, 18 U.S.C. §§1344 and 1349, in the Southern District of New York.

On January 31, 2018, Olson agreed to enter into a global plea agreement with respect to the charges in both the Middle District of Pennsylvania and the Southern District of New York. The government then

---

[1]Since the complete factual background of this case is detailed in the prior decisions of this court, (Docs. 72, 115 & 130), as well as in the Third Circuit's Opinion affirming this court's order denying Olson's motion to withdraw his guilty plea, (Doc. 100-1), and in the transcripts from Olson's guilty plea and sentencing hearings, (Docs. 99 & 140), it shall not be fully repeated herein. (*See also* Doc. 53 PSR, at 3-8).

filed an Information incorporating the two charges from the Middle District of Pennsylvania and the one charge from the Southern District of New York, along with a plea agreement signed by Olson. (Docs. 30 & 31).

On February 15, 2018, Olson plead guilty to the three charges contained in the Information pursuant to the plea agreement. (Doc. 37). During Olson's guilty plea hearing, the court conducted a thorough guilty plea colloquy. (*See* Doc. 140, Guilty Plea Hearing Transcript). Olson also signed an Acknowledgement of Rights Waived by Guilty Plea form and an entry of plea form. (Docs. 37 and 38). Significantly, Olson denied that anyone "persuaded, induced, threatened or coerced" him in any way to enter his guilty plea. (*See* Doc. 140 at 10).

Since the details of Olson's guilty plea colloquy are stated in the court's January 30, 2019 Memorandum denying his motion to withdraw his plea, (Doc. 72), as well as the guilty plea hearing transcript, (Doc. 140), they are not fully repeated herein. Suffice to say that in its prior Memorandum, (Doc. 72 at 6-7), the court stated, "[t]hrough its extensive plea colloquy, the court went into great detail with Olson concerning, among other things, his competence, rights, understanding, and volition in entering a plea, as well as a detailed review of the elements of the charges in counts one, two, and three", and "[t]he court concluded now as it did then that it is abundantly clear that Olson knew precisely to what he was pleading." The court found that

"Olson was competent when he signed his plea agreement and entered his guilty plea, and he knowingly and voluntarily did both after consulting with counsel." Moreover, at his plea hearing, the court asked Olson if any promises had been made to him other than what is contained in the plea agreement, and he indicated no. (Doc. 140 at 17). The court further specifically advised Olson that he may not, at a later date, "contend that there has been any promise, representation, agreement or understanding made with [him] by any person, either in or out of court, other than what we placed on the record here in court today." (Id.). Olson stated that he understood. (Id.). Following the thorough colloquy, the court concluded that Olson entered into the plea agreement "knowingly, intelligently and voluntarily of [his] own free will." (Id. at 17). The court also found that Olson understood the contents of the plea agreement and had sufficient time to discuss the plea agreement with his counsel, O'Brien. (Id. at 17-18).

Olson subsequently acknowledged reviewing, understanding and signing the Acknowledgment of Rights Form and the plea form, and the court accepted his plea. (Id. at 30-32).

On March 16, 2018, Olson filed a *pro se* motion and on March 30, 2018 a supporting brief to withdraw his guilty plea. (Docs. 41 and 43) Olson also filed a motion to appoint new counsel. (Doc. 42) On June 4, 2018, the court

appointed Dina Chivar, Esq., to represent Olson in place of O'Brien. (Doc. 50).

On July 23, 2018, the Probation Office filed the final Pre-Sentence Investigation Report ("PSR"). The PSR noted that Olson agreed with the statement of facts provided by the government at the guilty plea colloquy. (PSR ¶27). The probation office calculated Olson's guideline range to be 110 to 137 months' imprisonment. (PSR ¶78).

On August 1, 2018, Chivar requested to withdraw as counsel. (Doc. 57). On August 2, 2018 the court appointed Comerford to represent Olson. (Doc. 59). On November 2, 2018, Comerford filed a motion for Olson to withdraw his guilty plea, which was in addition to the motion Olson filed *pro se*. (Doc. 61). After the motion was briefed, the court denied Olson's counseled motion to withdraw his guilty plea, (Doc. 61), and dismissed as moot his *pro se* motion, (Doc. 41), on January 30, 2019. (Docs. 72 & 73).

On March 25, 2019, the Court sentenced Olson to 120 months of imprisonment on each count, to run concurrently, followed by 3 years of supervised release. (Doc. 92).

On April 4, 2019, Olson timely filed, *pro se*, a notice of appeal with the Third Circuit claiming that this court should have allowed him to withdraw his guilty plea. (Doc. 94). On October 23, 2019, Comerford filed a brief in support of Olson's appeal.

On April 27, 2020, the Third Circuit issued a Judgment and an Opinion affirming this court's January 30, 2019 Order denying Olson's motion to

withdraw his guilty plea. (Docs. 100 & 100-1). *See also* 799 Fed.Appx. 115 (3d Cir. April 3, 2020).

On March 19, 2021, Olson filed, *pro se*, his instant motion under 28 U.S.C. §2255 seeking to vacate his sentence. (Doc. 133). The motion has been briefed by the parties.

## II.    STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A]

motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010)(citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008)(quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013)(citation omitted). Hayden's instant claims fall within the purview of §2255 since they challenge the validity of his sentence regarding his sex trafficking conviction. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.")(citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that

7

counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

With respect to showing prejudice by counsel's performance regarding a guilty plea, in U.S. v. Bui, 795 F.3d 363, 367 (3d Cir. 2015), the Third Circuit stated that "[i]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (citation omitted).

## III.    DISCUSSION

The court analyzes Olson's claims of ineffective assistance of counsel using the two-pronged approach prescribed in Strickland. Olson must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. No doubt, the key to a knowing and voluntary guilty plea is the effective assistance of competent counsel. See Boyd v. Waymart, 579 F.3d 330, 349

9

(3d Cir. 2009) (citations omitted). Also, a defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." Bui, 795 F.3d at 367 (citation omitted).

In his §2255 motion, Olson requests the court to vacate his 120-months' prison sentence and to allow him to withdraw his guilty plea. Olson alleges that his initial trial counsel O'Brien was ineffective for advising him to accept the plea agreement and that O'Brien pressured him into pleading guilty causing his guilty plea to be involuntary. Olson also alleges that he had defenses to all three of the counts to which he pleaded guilty.

With respect to Olson's first claim of ineffectiveness of his trial counsel regarding O'Brien's advice to accept the plea deal, as the government points out, (Doc. 138 at 19-20), since the Third Circuit specifically addressed Olson's claim that this court abused its discretion by denying his request to withdraw his guilty plea, which is the same claim he is now raising, "this Court [should] dismiss Olson's claim of an involuntary plea, as it was previously decided on direct appeal" and found to be "'unavailing' because of prior inconsistent assertions." Also, as the government notes, and as this court is well-aware based on Olson's motions for compassionate release, "Olson still continues to make contradictory arguments in his many motions." "In the present motion [Olson] alleges he entered an involuntary guilty plea. Yet, on November 17, 2020, in his request for compassionate release, Olson specifically states 'Movant plead guilty and accepted responsibility for his illegal conduct.'" (Id. at 20 n. 1) (citing Doc. 118 at 5).

No doubt that Olson argued on direct appeal that he should have been allowed to withdraw his guilty plea because O'Brien was ineffective for pressuring him to plead guilty. The Third Circuit found no merit to this claim. (*See* Doc. 100-1). Thus, "[t]his claim, …, was already heard and denied by the Third Circuit on [Olson's appeal regarding his] motion to withdraw his guilty plea." Eason v. U.S., 2016 WL 4163548, *2 (D. N.J. Aug. 5, 2016) (citing U.S. v. Eason, 509 Fed.Appx. 180 (3d Cir. 2013)). "According to Third Circuit law, a petitioner cannot use 28 U.S.C. §2255 to relitigate an issue already litigated on direct appeal." *Id*. (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) ("Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal"); Sonneberg v. United States, 2003 WL 1798982, at *3 (3d Cir. Jan. 14, 2003) ("It is well settled that a petitioner generally may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition"); Nunez v. United States, 2008 WL 2705016, at *6 (D. N.J. July 8, 2008) (same)). *See also* U.S. v. Braddy, 837 Fed.Appx. 112, 115 (3d Cir. 2020) ("A §2255 motion does not function as a second appeal, *see* United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), and thus it does not ordinarily allow for re-review of issues raised on direct appeal.") (citations omitted).

Here, Olson's exact claim regarding his guilty plea was raised on direct appeal and the Third Circuit found that "the District Court did not abuse its discretion by concluding that Olson failed to make a credible showing of his

innocence" and that "the District Court concluded that Olson's proffered defenses were not credible and thus failed to show his innocence." The Third Circuit found that "[t]he District Court's reasoning is not 'arbitrary, fanciful, or clearly unreasonable,' [], so we do not find that the District Court's decision amounted to an abuse of its discretion." (*See* Doc. 100-1 at 3).

Additionally, with respect to Olson's instant claim that O'Brien pressured him to plead guilty, the Third Circuit, (Id. at 4 n. 2), noted as follows:

> Olson does not appear to challenge the District Court's finding that he failed to provide "sufficient reasons to explain why contradictory positions were taken before the [D]istrict [C]ourt." *See* [United States v. Jones, 336 F.3d 245, 253 (3d Cir. 2003)]. But if he does, his challenge is unavailing. Before the District Court, Olson asserted that he felt pressured by his then-counsel [O'Brien] to plead guilty. But Olson wrote a letter to the District Court indicating that his then-counsel [O'Brien] "advised Olson that he should go to trial." App. 11. Thus, the District Court did not abuse its discretion by finding that [Olson's] "'sole reason' for pleading guilty [was] contradicted by direct evidence from [his own] letter to this court." *Id.*

As such, "[Olson] cannot now use his §2255 motion to relitigate [his first] claim." *Id.* at *3 (citing DeRewal, 10 F.3d at 105 n 4). Thus, Olson's ineffective assistance of counsel claim regarding an involuntary guilty plea is **DENIED**.

Even if the court did address the merits of Olson's first claim, the record of his guilty plea colloquy completely undermines this claim. As the government summarizes in its brief, (Doc. 138 at 20-21), the record shows:

The Court questioned Olson on everything from his satisfaction with Attorney O'Brien's representation to Olson's understanding of the plea agreement. [Doc. 140] at 3-4 and 16-17. Olson admitted that no one made any promises to him, representations or agreements, beyond what is in the plea agreement. Id. at 17. The Court also informed Olson that the sentence that is imposed may be different from any estimate that his attorney provided to him and Olson affirmatively stated that he understood. Id. at 18-19. Importantly, Olson was provided with multiple opportunities throughout the hearing to inform the Court about any threats or false promises made to him by counsel [O'Brien] or the government's attorney to induce him to enter a plea. Nothing was ever said by Olson and the record is void of any evidence indicating that Olson was forced to enter his plea or that he was dissatisfied with counsel [O'Brien]. Olson alleges that trial counsel misled him into thinking he was preparing for trial. (Doc. 134 at 14). However, Olson signed the plea agreement on January 31, 2018 so he knew at that time there would be no trial. (Doc. 31). He indicated that he was not forced to enter into a plea agreement and if he did not want to enter his plea, he had two weeks between the signing of the plea agreement and the plea hearing to indicate that to the Court. [Noting that "[t]his is clearly contrary to Olson's false allegation that he 'signed a plea **after** a heated plea hearing.'" (Doc. 134 at 5) (emphasis added).

Additionally, insofar as Olson also requests to withdraw his guilty plea, one of the elements which the court considers, and which the defendant has the burden to show, is "whether the defendant asserts his innocence." United States v. Joseph, 786 Fed.Appx. 370, 373 (3d Cir. 2019) (citation omitted). In this case, Olson fails to reconcile any of his stated admissions he made at his guilty plea hearing with any claim of innocence. *See id.* Olson's contention in his present filings regarding his §2255 motion that he did not voluntarily plead guilty is undermined by his sworn statements he made to this court at his plea hearing. Further, Olson fails to adequately explain why he admitted, under oath, to committing the three charges to which he plead

guilty during his hearing. Indeed, a guilty plea is final after a sentence is imposed. *See* United States v. Feliz, 2019 WL 6496932, *15 (D. N.J. Dec. 3, 2019) ("A plea of guilty is a fully-warned, in-court statement under oath, not a strategic stopgap." "A defendant who wishes to withdraw a plea of guilty must 'give sufficient reasons to explain why contradictory positions were taken before the district court.'") (citations omitted). The guilty plea hearing transcript readily shows that Olson acknowledged that he understood the charges and that he admitted to the facts supporting the charges, which violated §§1343 and 1344. *See* United States v. Graulich, 524 Fed.Appx. 802, 806 (3d Cir. 2013) ("Rather than attempting to explain why contradictory positions were taken in the District Court, [defendant] claims innocence by arguing that he never had the intent to defraud. This argument is belied by [defendant's] plea colloquy, which shows that he admitted to having the requisite intent."); Feliz, 2019 WL 6496932, *21 (citing United States v. Mejia, 222 Fed.Appx. 136, 139–40 (3d Cir. 2007) ("affirming denial of [guilty plea] withdrawal motion where, although defendant asserted innocence, his present assertions were 'inconsisten[t]' and 'lack[ing] credibility' because he failed to sufficiently explain why he 'thoroughly admitted his guilt and did not contest the Government's characterization of the facts' during plea")).

In his *pro se* traverse, (Doc. 139), Olson also claims that his guilty plea was not knowingly made since O'Brien "pretend[ed] to be preparing for trial while colluding with the government in order to force a guilty plea out of [him]." Olson states that "the [plea] deal the government made with [him] and

[O'Brien] was also false" since "the government stated that if [he] pled guilty to 10 years, he would receive 3 points for acceptance." He also states that he only pled guilty since "[O'Brien] assured him that in a deal such as [he was getting], probation cannot enhance."

At Olson's guilty plea hearing, the court explained to Olson all the rights he had if he continued with his plea of not guilty and the rights he was giving up by pleading guilty. The government described the charges in counts one, two, and three as well as the potential maximum prison sentences Olson faced for these crimes. Additionally, Olson testified under oath at his guilty plea hearing and the court warned Olson that if he answered any of the court's questions untruthfully, he would subject himself to a charge of perjury or false swearing.

Further, Olson acknowledged that he read and understood his charges. After the government stated the details of the elements of each charge in counts one, two, and three, Olson admitted, under oath, that he was guilty of the charges. Moreover, in his Acknowledgment of Rights Waived, Olson reaffirmed his understanding that by pleading guilty to counts one, two, and three of the information he was "admitting that what the Government says about [him] in the Information is true and that [he] did, in fact, commit the offenses with which [he was] charged." At the hearing, Olson admitted he read the Acknowledgment, discussed it with O'Brien, and understood its contents before he signed it. (Doc. 140 at 31).

There is also no merit to Olson's claim in his traverse that O'Brien mislead him about his acceptance of responsibility. As the court explained in its January 30, 2019 Memorandum, (Doc. 72 at 7), "[b]y entering into the plea agreement with the government and accepting responsibility, Olson significantly reduced his exposure to incarceration. In the plea agreement, the government agreed that '[i]f the defendant can adequately demonstrate recognition and affirmative acceptance of responsibility to the Government as required by the Sentencing Guidelines, the Government will recommend that the defendant receive a three-level reduction in the defendant's offense level for acceptance of responsibility.'" (citing (Doc. 31, at 9-10)). Further, Olson was advised and understood that the court was not bound by any agreement between the parties as to the sentence it imposed on him.

As his second claim Olson contends that Comerford, his third appointed counsel, was ineffective for filing a motion to withdraw his guilty plea without first discussing it with him.[2] He further states in his traverse, (Doc. 139 at 2), that "Comerford entered a motion to withdraw [his] plea with

---

[2]Despite the fact that Olson did not raise his second claim, which is against Comerford, in his direct appeal, he is not procedurally barred from collaterally attacking his sentence under §2255 since ineffective assistance of counsel claims are an exception to the general rule of procedural default. Massaro v. United States, 538 U.S. 500, 504 (2003).

no knowledge of [his] case or situation." Olson also essentially claims that while Comerford agreed to pursue his direct appeal after he filed his *pro se* notice of appeal, Comerford did not communicate with him about his appeal and filed a brief in support of his appeal without discussing it with him. (Id.).

As a backdrop to this claim, after Olson plead guilty to the three charges listed in the information on February 15, 2018, (Doc. 37), he filed a *pro se* motion to withdraw his guilty plea, (Doc. 41), and a *pro se* motion to appoint new counsel, (Doc. 42), on March 16, 2018. After the court replaced Chivar with Comerford as Olson's counsel on August 2, 2018, Comerford then filed another motion to withdraw Olson's guilty plea on November 2, 2018. (Doc. 61). Comerford then filed a brief in support of the motion and a reply brief. (Docs. 64 & 69). As the government points out, (Doc. 138 at 23):

> [Comerford's] reply brief argues various reason for innocence, consistent with Olson's prior statements, as to why the plea should be withdrawn. (Doc. 69). Attorney Comerford could not have gotten these details regarding Olson's alleged innocence without meeting with Olson. For Olson to assert that he never met with Comerford to discuss this matter is incredible.

Based on Comerford's filings regarding the motion to withdraw Olson's guilty plea, it is abundantly clear that Comerford advanced all of the arguments Olson sought to raise. Thus, the court finds no merit to Olson's claim that Comerford failed to discuss the stated motion with him.

Moreover, Comerford's appeal brief he filed on Olson's behalf with the Third Circuit on October 23, 2019, *see* U.S. v. Olson, 799 Fed.Appx. 115 (3d Cir. 2020), brief of appellant available on WestLaw, C.A. No. 19-1759,

Document: 003113383545, clearly shows that Comerford raised all of the relevant issues Olson addressed, and wanted addressed, including a very detailed argument with respect to his claims of innocence to the three charges, in support of his appellate claim that he should have been allowed to withdraw his guilty plea.

Finally, assuming *arguendo* that Comerford did not meet with Olson before he filed the motion to withdraw the guilty plea and before he filed the appeal brief, there is clearly no prejudice to Olson. As both this court and the Third Circuit found, Olson's motion to withdraw his plea lacked any valid legal basis for withdrawal. With respect to Olson's claim that Comerford failed to meet with before filing his appeal brief, as the government summarizes, "[t]he only appealable issue based upon a guilty plea is the validity of the plea", and "[c]learly the colloquy was legally sound so the appeal was based upon the District Court's denial of Olson's right to withdraw his plea based upon his baseless allegation of innocence." (Doc. 138 at 23).

Thus, the court will deny Olson's second claims of ineffective assistance of counsel against Comerford. *See* <u>Washington</u>, 869 F.3d at 204 ("[B]oth deficiency and prejudice must be proven to have a valid [ineffective assistance of counsel] claim for relief.") (citation omitted); <u>Strickland</u>, 466 U.S. at 694 (to establish the prejudice prong the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different").

## IV.  EVIDENTIARY HEARING

Olson specifically requests an evidentiary hearing in his §2255 motion. The government also raises this issue in its brief and contends that no hearing is required. Thus, the court will address whether an evidentiary hearing is appropriate in this case.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). In considering a §2255 motion, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. U.S., 294 Fed.Appx. 709, 710 (3d Cir. 2008) (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record.") Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)); *see also* Melter v. United States, 2016 WL 7163591, *3 (M.D. Pa. Dec. 7, 2016) ("The district court, however, without further investigation may dispose of 'vague and conclusory allegations

contained in a §2255 petition.'") (citation omitted). A review of the motion, the traverse, the government's brief and the guilty plea transcript, as well as the law and the claims, make it clear that Olson's allegations of ineffective assistance of counsel are wholly unsupported by the record. The court finds that Olson is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Olson has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## VI.    CONCLUSION

Based on the foregoing, the court finds Olson fails to show that his counsel, O'Brien and/or Comerford, were ineffective or deficient in any way. Therefore, the court will **DENY** Olson's §2255 motion with respect to all of his claims. **(Doc. 133)**. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 18, 2021**
17-240-03

21